## ESTATE OF ESTHER HIGH, DECEASED.

APPEALS BY S. H. BOYER, S. L. KEIM AND W. K. RANDOLPH, FROM THE ORPHANS' COURT OF BERKS COUNTY.

Argued March 4, 1890—Decided October 6, 1890.
[To be reported.]

1. When an executor's account has been confirmed and the money paid out under a decree of distribution, it is too late to have the account reviewed for the purpose of following the money in the hands of the distributees;

Statement of Facts.

and the decision in Keim's App., 125 Pa. 480, might well have been rested on this ground alone.

(a) One to whom real estate had been devised for life with remainder to his children, but who never had any children, sold the land, as trustee, in pursuance of a decree under the act of April 18, 1853, P. L. 503. After his death, his executrix settled an account, charging herself with the principal arising from said sale as due to the estate of the devisor:

2. Such account having been confirmed, and said fund awarded by the Orphans' Court to the administrator de bonis non, etc., of the devisor, the executrix had no standing, at the audit of the administrator's account, to claim the fund back on the ground that the sale under the act of 1853 enlarged the life-tenant's estate to a fee.

3. As a general rule, no one can claim upon a distribution in the Orphans' Court except through the decedent, as creditor, heir or legatee; and the exceptions to this rule, established by such cases as Marshall v. Hoff, 1 W. 440, and Miller's App., 84 Pa. 391, cannot apply when the fund has been judicially ascertained to belong to the decedent's estate.

4. Under a devise to one for life, with remainder to his children "or their heirs," the devisee having died without ever having had children, the remainder never vested in any one; and hence the reversion, subject to the life-estate, remained in the estate of the testator and passed under a residuary clause.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 134, 140, 141 January Term 1890, Sup. Ct.; court below number and term not given.

On January 25, 1887, Abner K. Stauffer, administrator d. b. n. c. t. a., of the estate of Esther High, deceased, settled an account of his administration. The account, showing a balance due the estate of $3,844.28, embraced on its debit side an item as follows : "Received of Sara L. Keim, executrix of DeBenneville Keim, deceased, as per adjudication filed on her account n the Orphans' Court of Berks County and now absolute, . . . . . . $2,667.56."

On March 7, 1887, the account was called for audit before SCHWARTZ, P. J. Without the taking of any testimony, the hearing was adjourned from time to time, until after the determination of a proceeding, mentioned below, for the review of the adjudication in the estate of DeBenneville Keim, deceased, referred to in the account; but on May 25, 1889, testimony was submitted and the following facts were shown:

Esther High died unmarried in 1848, leaving to survive her,

as next of kin, collateral relatives, and having made a will which was duly admitted to probate on May 5, 1848, the fifth clause whereof was as follows:

"5. I do hereby give, devise, and bequeath unto my two nephews, Isaac H. Keim and DeBenneville Keim, in common during life, the possession, use, benefit, rents, issues, and profits of all that certain one-acre (more or less) lot of ground, situate on the southwest corner of Fifth and Elm streets, in the borough of Reading, to be enjoyed by the said Isaac H. Keim and DeBenneville Keim during life; and, immediately after their decease, the same shall descend to their children in equal shares, or their heirs, yet so that the children of each only divide between them the share which belonged to their father. And I do hereby further give and bequeath unto the said Isaac H. Keim alone during life, the yearly interest on one thousand dollars cash, and four shares of stock in the Farmer's Bank of Reading, and also one sixth part of a fifth part of the residue of my estate hereinafter mentioned, and one single bed, and immediately after his decease, the principal sum of $1,000, bank shares, and sixth part of a fifth part of my estate, and a single bed, to be equally divided between his children or their heirs. And I do hereby further give and bequeath unto the said DeBenneville Keim alone during life the yearly interest on one thousand dollars cash, four shares of stock in the Farmers' Bank of Reading, one sixth part of a fifth part of the residue of my estate hereinafter mentioned, and my mahogany washstand, with marble slab, and all that belongs to it; and immediately after his decease, the said principal sum of $1,000, bank stock, sixth part of a fifth part of my estate, and a washstand, shall be equally divided between the children of the said DeBenneville Keim or their heirs."

The will contained a considerable number of devises and bequests to other relatives of the testatrix. Nearly all of them were made subject to limitations similar to those in the fifth clause, viz., to the devisee or legatee for life, and at his death to his children or their heirs. In some instances there were further limitations in the event of the death of such children without issue, before attaining the age of eighteen years. One of the bequests made was directed to revert to the residuary estate of the testatrix in case the life-tenant should die without issue.

Statement of Facts.

The residuary clause was as follows:

" 16. All the remainder or residue of my estate, of whatever description the same may be or consist of, shall, after all the necessary expenses and the collateral inheritance taxes are paid out, shall be divided into five equal shares or parts, one of which shall be divided between the children of my brother, William High, or their heirs, in manner hereinbefore directed; another of said fifth part shall be equally divided among the issue of my deceased sister, Mary Keim, as I have hereinbefore directed; one fifth part to my sister, Susan H. Boyer, in manner as is hereinbefore directed; one fifth part to my brother, John H. Nagle, in manner as hereinbefore directed; and one fifth part to my niece, Sarah W. Moers, in such manner as is hereinbefore directed."

Neither Isaac H. Keim nor DeBenneville Keim ever had any children.

On February 16, 1856, Isaac H. and DeBenneville Keim presented a petition to the Orphans' Court of Berks county, reciting the devise of one acre of ground contained in the fifth paragraph of the will of Esther High, and also the residuary clause thereof; praying for a sale of said real estate under the act of April 18, 1853, P. L. 503, and stating that it was the purpose of the petitioners " to bar any and every estate-tail, contingent remainder, or the right of the commonwealth to have inquisition of any estate defeasible." Thereupon the court awarded a citation, directed to certain persons named as having an expectant interest in the premises, requiring them to appear and answer the petition; and upon the return of the citation, on April 14, 1856, the court decreed the sale of the property, appointing DeBenneville Keim trustee to make the sale. Subsequently, the trustee reported sales thereof, in separate parcels, which sales were duly confirmed by the court, and the proceeds thereof, aggregating $5,504.12, were received by DeBenneville Keim as trustee.

In 1884, after the death of Isaac H. Keim, the one half of the principal arising from said sales, was paid by the trustee to the executor of Esther High, and was distributed by the Orphans' Court, in proceedings in her estate, to DeBenneville Keim and the children of his deceased brothers and sisters, the court holding that Isaac H. Keim, under the will of Esther

High, took only a life-estate in the property devised and bequeathed to him thereby.

DeBenneville Keim died November 22, 1885, leaving a will, duly admitted to probate, whereby he made his wife, Sara L. Keim, his sole devisee and legatee and also his executrix. On April 28, 1886, she settled an account as "executrix of DeB. Keim, who was the trustee for the sale of real estate devised by Esther High," charging herself with the one half of the proceeds of the sales of real estate made by the trustee, and with four shares of bank stock. By an adjudication thereon, filed October 19, 1886, the Orphans' Court ordered the payment of the cash balance thereby exhibited, and the transfer of the bank stock therein mentioned, to A. K. Stauffer, administrator d. b. n., c. t. a., of Esther High, deceased. In accordance with this order, Mrs. Keim made the payment and transfer therein directed.

On May 2, 1887, Mrs. Keim petitioned the Orphans' Court for a citation upon A. K. Stauffer, administrator, etc., of Esther High, to show cause why her said account should not be reviewed and corrected by striking out therefrom the debit for proceeds of real estate, the petitioner averring that she had just been advised that the judicial proceedings in 1856 enlarged the estate of DeBenneville Keim to a fee-simple, and that, as his executor and sole legatee, the petitioner was entitled to the fund raised thereby. A demurrer and an answer to this petition having been filed, the Orphans' Court, after hearing, overruled the demurrer, but made a decree upon the merits dismissing the petition, which decree, upon appeal to No. 117 January Term 1889, Sup. Ct., was affirmed: Keim's App., 125 Pa. 480.

At the death of DeBenneville Keim, his next of kin were thirteen nephews and nieces, all grandchildren of his deceased mother, Mary H. Keim, to wit: four children of William H. Keim, a deceased brother; seven children of John H. Keim, a deceased brother; one son of Matilda Ludwig, a deceased sister; and one son of Emily Randolph, a deceased sister, namely, William K. Randolph.

After the hearing and argument, the court, SCHWARTZ, P. J., filed an adjudication in part as follows:

Adjudication.

This fund [the net balance for distribution to legatees, $3,512.78] is claimed by three different parties :

1. By Sara L. Keim, sole legatee of DeBenneville Keim, deceased. This court has decided several times that her testator had only a life-estate in the fund for distribution embraced in this account. The claimant, being dissatisfied, appealed, but took nothing under it: Keim's App., 125 Pa. 480. It cannot now find any reason for reversing itself, and the Supreme Court which affirmed it.

2. The whole body of testatrix's residuary devisees and legatees lay claim to this fund. The estate under the will is divided into five parts, between her brother, John H. Nagle, her sister, Susan H. Boyer, heirs of her brother, William High, deceased, heirs of her sister, Mary H. Keim, deceased, and her niece, Sarah H. Moers, daughter of Mrs. Moers, a deceased sister of the decedent.

All wills are construed from their four corners. The testatrix divided her estate, presumably from its context, into five equal shares to her heirs-at-law. But, further, she made all devises and legacies to the first takers for life, with remainder over to their " children or their heirs." Such being the case, the children necessarily took as purchasers. If some of the life-tenants died without leaving children, their estates, by the terms of the will, went to the heirs of the children, who, beyond all question, were their aunts and uncles and their heirs. The distribution is made accordingly to the heirs of Mary H. Keim, deceased.

3. It is further contended that in case the balance for distribution be awarded to the heirs of Mary H. Keim, the same must be distributed per stirpes to the several heirs of the children of Mary H. Keim ; that is to say, it must be divided into four equal parts, and one share thereof distributed to the heirs of each of her four children.

This money must be distributed under the testatrix's will. She has not indicated the manner of distribution. The court takes it that the distribution must be made as if the decedent had died intestate, and as if the grandchildren of Mary H. High were the heirs of the decedent.

The statute of April 27, 1855, P. L. 368, was cited. Under it, it is argued that the distribution must be per stirpes. The

act provides that grandchildren of brothers and sisters shall take by representation. This act extends the right of inheritance one degree among collateral heirs, and is peculiar in this, in that it enacts, where the heirs-at-law are nephews and nieces, and children of deceased nephews and nieces, the latter shall inherit their parents' shares. This act has no application to the case under consideration, there being no nephews and nieces, but only grand-nephews and grand-nieces.

These heirs inherit as next of kin. They all being of the same degree, distribution must be made equally between them.

—The auditing judge thereupon filed a distribution, in accordance with the foregoing, dividing the fund equally among the thirteen nephews and nieces of DeBenneville Keim above named, and decreed that the accountant make payment thereof accordingly.

Exceptions to the adjudication were dismissed by the court, SCHWARTZ, P. J., in the following opinion:

Three different parties, in as many interests, have filed exceptions to the adjudication.

Isaac Hiester, Esq., as counsel for Sara L. Keim, devisee and legatee of DeBenneville Keim, deceased, seeks through his objections to have the fund distributed to her under the will of her husband. The court has heretofore several times decided that DeBenneville Keim had only a life-estate in the fund for distribution, and as it continues of the same opinion, it dismisses his exceptions:

Cyrus G. Derr, Esq., counsel in behalf of the heirs of Esther High, generally, filed exceptions to the distribution. His contention for them is, that the fund in the account for distribution should have been distributed to the heirs of Esther High generally. This question has also been decided several times against them. The court, without going into the merit of his argument, but holding to its former findings and decisions, dismisses his exceptions, also.

Horace Roland, Esq., as counsel for Wm. Keim Randolph, also files a number of exceptions in his behalf, under which he contends that one fourth of the fund should be distributed to Wm. Keim Randolph, as the only child of Emily Susan Randolph, niece of the decedent and daughter of said Mary H.

Opinion of Court below.

Keim, who was decedent's sister.   In other words, the contention is that the distribution must be made per capita to the children of said Mary H. Keim, and per stirpes to their children, respectively, under decedent's will.   The fund is realized through the failure of children of DeBenneville Keim, deceased, by reason of which it reverted to the estate of the decedent for distribution under her will.   The same not prescribing the manner of distribution, the court holds that our intestate laws give the only light to its disposition.

The only other question raised for him, is as to the time this estate vested finally for the distributees.   Was it at the time of the death of Esther High, or at the death of DeBenneville Keim, in 1885?   There was a possibility of children by DeBenneville Keim, to the time of his death.   No vesting in the heirs of the now distributees could take place during the lifetime of DeBenneville Keim.   At his death, children became impossible. The final vesting of the estate happened at that time, and fixed the mode of distribution.

His exceptions are also dismissed, and the report upon adjudication is confirmed absolutely.

—Thereupon Sara L. Keim, executrix, etc., took the appeal to No. 140, specifying that the court erred:

1. In not distributing to the exceptant the sum of $2,752.06 of the balance in the hands of the accountant, said amount being the proceeds of sale of real estate devised by decedent to DeBenneville Keim for life with contingent remainders over, which contingent remainders were barred by the said DeBenneville Keim under §§ 5, 6, of the acts of April 18, 1853, whereby his life-estate was enlarged into a fee, and the said proceeds of sale vested in him absolutely.

And Susan H. Boyer took the appeal to No. 134, specifying that the court erred:

3. In not distributing the fund in accordance with the provisions of the residuary clause of the decedent's will.

4. In not awarding one fifth of the fund to the appellant.

5. In distributing the fund to the heirs of Mary H. Keim, deceased.

And Wm. K. Randolph took the appeal to No 141, specifying that the court erred:

1. In distributing the fund to the grandchildren of Mary H. Keim, deceased, per capita.

Arguments.

*Mr. Isaac Hiester*, for Sara L. Keim, appellant in No. 140:

1. The devise in the fifth clause of Esther High's will vested in Isaac and DeBenneville Keim estates for life with remainders to their children: Keim's App., 125 Pa. 480. As no children were in existence, these remainders were contingent: Jordan v. McClure, 85 Pa. 495. At the time the will took effect, the law would have enabled the life-tenants to defeat the contingent remainders and to acquire the absolute estate, by suffering a common recovery to the use of themselves in fee: Lyle v. Richards, 9 S. & R. 322; Abbott v. Jenkins, 10 S. & R. 298. By § 5, act of April 18, 1853, P. L. 503, a method of barring contingent remainders by means of a judicial sale was provided, and, under the provisions of § 13, act of March 21, 1806, 4 Sm. L. 332, this statutory method superseded the proceeding by common recovery. The sale made in 1856 was conducted in accordance with the directions of § 5 of the act of 1853, and therefore the purchase money became the absolute property of the life-tenants: § 6, act of 1853.

2. It is sought by the appellees to avoid the effect of the positions above stated, on three separate grounds: (*a*) It is said that in 1884, on the death of Isaac, one half of the purchase-money was distributed by the Orphans' Court to the heirs of Esther High, including DeBenneville Keim, whereby his representatives are estopped from controverting the title of Esther High to the other half of it. We assert, however, that the persons to whom that distribution was made in 1884, were the heirs and next of kin of Isaac Keim, and that DeBenneville received only such portion as he was entitled to receive as one of such heirs and next of kin. (*b*) It is said that Keim's App., 125 Pa. 480, decides that DeBenneville, by the proceedings to defeat the contingent remainders, did not acquire an absolute estate in his half of the purchase-money, but an examination of the report will show that this court did not consider, much less decide, the effect of that proceeding. (*c*) It is said that no one can claim here except as creditor, legatee or next of kin of Esther High.

3. To the third position of the appellees there are two very sufficient answers. The first is, that the plan of distributing the fund to the representatives of the life-tenant under proceedings in the estate of Esther High, if not strictly regular,

originated in 1884, as a convenient method of distributing Isaac's share, and was acquiesced in by the appellees, and Sara L. Keim simply followed, in the present instance, the practice then pursued. A mistake by which something has been included in an account not belonging there, may be corrected upon an adverse claim in the Orphans' Court: Miller's App., 84 Pa. 391; Malone's Est., 8 W. N. 179; McCarron's Est., 15 W. N. 485. But, secondly, if the appellees were in a position to avail themselves of this objection, Mrs. Keim relieved the situation of all difficulty by presenting the petition which was before this court in Keim's App., supra, asking for leave to withdraw the fund from this estate before distribution. In one way or another she is entitled to relief. We may remark that the demurrer to the form of the remedy in Keim's Appeal, was overruled by the voluntary answer upon the merits.

*Mr. S. M. Meredith* (with him *Mr. A. K. Stauffer*), for B. R. Keim and others, appellees in Keim's Appeal, No. 140:

1. Every question raised in this appeal was directly raised, argued, considered and passed upon in Keim's App., 125 Pa. 480. After the decision therein, Sara L. Keim applied for a re-argument, and in her petition she distinctly asked this court to consider the very question which she now raises. The application was refused, and the point raised in the present appeal is therefore res judicata.

2. An insuperable obstacle in the way of the appellant is, that she had no status as a creditor or as a devisee of Esther High, whose estate alone is for distribution. In this proceeding, she cannot take the fund on the ground that it is part of the estate of DeBenneville Keim: McBride's App., 72 Pa. 480; Braman's App., 89 Pa. 78. A claimant adverse to the decedent's estate has no standing in a distribution in the Orphans' Court: Gravenstine's App., 2 Penny. 61.

*Mr. Cyrus G. Derr*, for Susan H. Boyer, an appellee in No. 140, and appellant in No. 134:

1. The remainder given by the will to the children of Isaac and DeBenneville Keim was necessarily contingent, there being no such children in esse: Jordan v. McClure, 85 Pa. 495. The reversion of the entire fee-simple estate, subject to the

life-estate, passed under the residuary devise: 2 Jarman on Wills, *647; Moreton v. Fossick, 1 B. & Ad. 186; Brown v. Boyd, 9 W. & S. 123; Keim's App., 125 Pa. 480. While the remainder to DeBenneville's children could not vest, because there were no children in being, the interest of the residuary devisees in this property was a vested one, although liable to open and let in the children of DeBenneville, had such ever come into being: Roe v. Davis, 1 Y. 332, and authorities therein cited.

2. Whatever the effect of the proceedings under the act of April 18, 1853, P. L. 503, upon the contingent remainder in favor of DeBenneville's children, it could not impair the vested interests of the residuary legatees. Under the provisions of the act, the proceeding bars simply estates-tail and contingent remainders, not vested interests, and is to have "the effect of any other proceeding" for that purpose. It is perhaps correct that it is the equivalent of a common recovery; but a common recovery does not affect a vested remainder. Its operation is to destroy the particular estate by forfeiture, and the contingent remainder, dependent thereon, then falls for want of support: Dunwoodie v. Reed, 3 S. & R. 435; Lyle v. Richards, 9 S. & R. 322; Abbott v. Jenkins, 10 S. & R. 296. Not only did the proceeding fail to affect injuriously the vested remainder of the residuary devisees, but they might, under the doctrine of forfeiture, have entered at once into possession.

*Mr. Hiester*, in reply to Mr. Derr:

The ulterior limitation to the residuary devisees was not a vested remainder, but an alternative contingent remainder: Roe v. Davis, 1 Y. 332; Dunwoodie v. Reed, 3 S. & R. 435; Stump v. Findlay, 2 R. 168; Waddell v. Rattew, 5 R. 231. A common recovery defeats the ulterior limitation, no matter what it is: 2 Bl. Com., 361; Taylor v. Taylor, 63 Pa. 486. If, as contended, the residuary devisees might at once have entered into possession of the property, they are now barred by the statute of limitations: Trickett on Limitations, § 99; Marple v. Myers, 12 Pa. 126; Baldridge v. McFarland, 26 Pa. 339. DeBenneville Keim's possession of this money was adverse for more than thirty years.

*Mr. S. M. Meredith* (with him *Mr. A. K. Stauffer*), for the appellees in Boyer's Appeal, No. 134:

The principle of construction laid down by the court below is fully supported by the authorities. The intention of the testator is to be gathered, not from the terms of a particular devise, but from the whole scheme of the will : Middleswarth v. Blackmore, 74 Pa. 414 ; Ferry's App., 102 Pa. 207. Taking this will as a whole, it is evident that one of the fixed aims and purposes of the testatrix was that the chief part of her estate should go to and remain in the branch of the family to which she gave it. She could not have meant that this fund should in any event go back into her general residuary estate. If she had, she undoubtedly would have said so.

*Mr. Horace Roland*, for Wm. K. Randolph, appellant in No. 141:
The distribution should have been made under the will of Esther High, not under the intestate laws. A will should be so construed as to avoid a partial intestacy if possible : Little's App., 81 Pa. 190 ; Raudenbach's App., 87 Pa. 51 ; Board of Missions' App., 91 Pa. 507. As the life-tenants had no children, the remainder vested at once under the will in the next of kin of the life-tenants who were then living. The law favors vesting rather than contingency : Chess's App., 87 Pa. 362 ; Churchman's App., 22 W. N. 131 ; McClure's App., 72 Pa. 415 ; Buzby's App., 61 Pa. 111 ; Provenchere's App., 67 Pa. 463 ; Lantz v. Trusler, 37 Pa. 482. The children of those in whom a devise has vested are entitled to the shares of their deceased parents : Young v. Stoner, 37 Pa. 105. Should this remainder be treated as part of the residuary estate, the distribution must still be per stirpes.

*Mr. S. M. Meredith* (with him *Mr. A. K. Stauffer*), for the appellees in Randolph's Appeal, No. 141:

The time as of which this distribution is to be made is the date of DeBenneville Keim's death, for the reason that until then there was always the possibility of his leaving issue and of there being nothing upon which the residuary clause of the will could operate : Cote v. VonBonnhorst, 41 Pa. 243. At that time the act of June 30, 1885, P. L. 251, directing a per capita distribution when all who are entitled to take stand in the same degree of consanguinity to the decedent, was in force.

### KEIM'S APPEAL.

OPINION, MR. CHIEF JUSTICE PAXSON:

It was held in Keim's App., 125 Pa. 480, that under the will of Esther High, deceased, Isaac H. Keim and DeBenneville Keim took but a life-estate, with remainder to their children respectively. Our attention is now called to the fact that in 1856, the said life-tenants, Isaac H. Keim and DeBenneville Keim, obtained an order of sale under the act of 1853, known as the Price Act, for the purpose of barring contingent remainders, and that the real estate was sold in pursuance thereof. It is claimed that the remainders to the children were contingent, and were therefore effectually barred by the proceedings referred to; that by reason thereof the life estates were enlarged into a fee. This question does not appear to have been discussed either in the court below, or here, in Keim's Appeal, and will not be discussed now for the reasons hereafter stated.

On the death of Isaac H. Keim, in 1884, intestate, his one half of the purchase-money, $2,752.06, was returned to the executor of Esther High, deceased, and was distributed by him to the heirs and next of kin of said Isaac H. Keim, in obedience to the adjudication of the Orphans' Court. With this money we have no concern.

On the death of DeBenneville Keim, in 1886, the other half of said sum, viz., $2,752.06, was in his hands as trustee in the proceedings under the Price Act. Sara L. Keim, the appellant, was executrix and sole legatee under his will. She did not then claim the money as belonging to his estate. On the contrary, she filed her account as executrix of said DeBenneville Keim, in which she charged herself with his share of the proceeds of the sale as due and belonging to the administrator de bonis non, cum testamento annexo, of Esther High, deceased, which account was confirmed, distribution ordered in accordance therewith, and the money actually paid to Abner K. Stauffer, the administrator, etc., of Esther High's estate. Subsequently, the appellant petitioned the court below for a bill of review and for a re-statement of her account, upon the ground that she had been advised that the sale in 1856 had enlarged her husband's estate to a fee, and that as his executrix and sole legatee she was entitled to the fund. The court below refused her application, and denied the review. Mrs. Keim

appealed from this decree, and the case is reported as Keim's Appeal, supra.

The decree was affirmed here, principally upon the ground that DeBenneville Keim took but a life-estate under the will of Esther High. That is not the only ground, however, upon which that decision can be supported. In the court below, the respondent had filed an answer, and also a demurrer to the petition, alleging that the Orphans' Court had no power or jurisdiction to grant the relief prayed for. In reference to this, it was said by our Brother STERRETT, in the concluding sentence of his opinion: "As to the other question, we incline to think the appellee's demurrer should have been sustained, but the decision of the court being in favor of the appellant, the question is not necessarily before us." The question was not discussed, because it was not considered necessary. Yet the decision of the court might well have been rested upon this ground alone. Her account had been confirmed, and the money paid out in obedience to the order and decree of the Orphans' Court. It was then too late to have a review of her account for the purpose of following the money in the hands of the person to whom she had paid it. The act of assembly is explicit that a review shall not be granted after the fund is distributed. For these reasons, it is unnecessary now to discuss the effect of the proceedings to bar contingent remainders under the act of 1853.

The account now before us and upon which the present contention arises, is that of Abner K. Stauffer, administrator de bonis non, cum testamento annexo, of Esther High, deceased. The fund for distribution is composed in part of the money paid to the said administrator, under the order of the Orphans' Court, by Sara L. Keim, executrix of DeBenneville Keim, deceased. This clearly appears by the following debit in the account of the administrator: "Received of Sara L. Keim, executrix of DeBenneville Keim, deceased, as per adjudication filed on her account in the Orphans' Court of Berks county, and now absolute, $2,667.56." This money was claimed by the said Sara L. Keim, the appellant, before the auditing judge, upon the ground that it was her money, having been paid to the administrator of Esther High, deceased, in mistake, and in ignorance of her rights. The learned judge rejected the claim

in this somewhat terse opinion: " This court has decided several times that her testator had only a life estate in the fund for distribution embraced in this account. The claimant, being dissatisfied, appealed, but took nothing under it: Keim's App., 125 Pa. 480. It cannot now find any reason for reversing itself, and the Supreme Court which affirmed it." From this decision the present appeal was taken.

The appellant does not claim under the will of Esther High; on the contrary, she claims as the sole legatee, under the will of DeBenneville Keim, a fund which has been judicially determined to belong to the estate of Esther High. The proceedings below and here settle this question beyond all controversy. If we concede that a mistake was made by the appellant, we cannot correct it now. Something is due to the finality of judicial proceedings. The appellant is confronted at the very threshold of her case by decrees of the Orphans' Court, in full force and unreversed, which are a flat bar to her claim. The fund having been judicially ascertained to belong to the estate of Esther High, it is clear that the appellant cannot claim adversely to that estate. The general rule that no one can claim, in the distribution of a fund in the Orphans' Court, except through the decedent, as creditor, legatee, or next of kin, is settled and unquestionable: McBride's App., 72 Pa. 480; Braman's App., 89 Pa. 78; Gravenstine's App., 2 Penny. 61; Winton's App., 111 Pa. 387. The case differs essentially from the line of cases of which Marshall v. Hoff, 1 W. 440, and Miller's App., 84 Pa. 391, may be said to be typical, which establish the exceptions to this rule, and hold that the fund may be shown to be wrongfully included in the account, either because, though in the name of the decedent, it is really a trust, or because the title is in another person. There is no room for the application of this principle, for the reason, before stated, that this fund has been judicially ascertained to belong to the estate of Esther High.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

BOYER'S APPEAL.

OPINION, Mr. CHIEF JUSTICE PAXSON:

This was an appeal from the decree of the Orphans' Court

of Berks county, distributing the fund in the hands of the administrator de bonis non, cum testamento annexo, of Esther High, deceased. The fund is the proceeds of the share devised by said Esther High to DeBenneville Keim, and which, after his death, was sold and the proceeds brought into this account for distribution. For the purposes of this case we must treat the interest of DeBenneville Keim as a life-estate only, with remainder to his children: Keim's App., 125 Pa. 480. DeBenneville Keim died without children, and the question now is, to whom is the fund to be distributed?

It is proper to remark as a preliminary that we are distributing the estate of Esther High, not that of DeBenneville Keim. In the devise to Isaac H. Keim and DeBenneville Keim the testatrix uses this language: "To be enjoyed by the said Isaac H. Keim and DeBenneville Keim during life; and, immediately after their decease, the same shall descend to their children in equal shares, or their heirs, yet so that the children of each only divide between them the share which belonged to their father." The learned judge below held that although DeBenneville Keim never had any children, yet the estate should go to the heirs of the children, or to those who would have been their heirs had there been children. This sufficiently appears from the following extract from the opinion of the Court: "If some of the life-tenants died without leaving children, their estates, by the terms of the will, went to the heirs of the children, who, beyond all question, were their aunts and uncles and their heirs. The distribution is made accordingly to the heirs of Mary H. Keim, deceased." Notwithstanding this, we do not see very clearly how the estate of Esther High is to be distributed to the heirs of Mary H. Keim.

As before observed, the devise was to DeBenneville Keim for life, with remainder to his children. Under it he did not take a freehold of inheritance: Keim's App., supra. The remainder was contingent upon his having children. He had no children, either when the will was made, or when he died. Hence the remainder never vested in any one, and there was no limitation over. It follows that the remainder was not disposed of; it remained in the estate of Esther High, and passed under the residuary clause of her will. In Brown v. Boyd, 9 W. & S. 123, it was held that where in a devise the testator

grants less than his entire estate, leaving a reversion undisposed of, such reversion will pass under a residuary clause. The residuary clause in the will of Esther High is as follows: " All the remainder or residue of my estate, of whatever description the same may be or consist of, shall, after all the necessary expenses and the collateral inheritance taxes are paid out, shall be divided into five equal shares or parts, one of which shall be divided between the children of my brother, William High, or their heirs, in manner hereinbefore directed; another of said fifth parts shall be equally divided between the issue of my deceased sister, Mary Keim, as I have hereinbefore directed; one fifth part to my sister, Susan H. Boyer, in manner as is hereinbefore directed; one fifth part to my brother, John H. Nagle, in manner as hereinbefore directed; and one fifth part to my niece, Sarah W. Moers, in such manner as is hereinbefore directed."

With this plain direction as to what should be done with her estate, it is needless to speculate as to the intent of the testatrix. She has expressed it in language free from ambiguity. In construing this will, in Keim's App., supra, the opinion was expressed that this money, which represented the land, reverted to the estate of Esther High, and was to be distributed under the residuary clause of her will. It is true, the question of distribution was not directly involved in that case, and the remark may be regarded as dictum, yet the point was so clear that we did not suppose it would ever be questioned. We are of opinion that the fund in controversy should be divided into five equal parts or shares, and distributed as directed by the residuary clause of the will of Esther High.

All the assignments of error are sustained.

The decree is reversed; and it is now ordered that the record be remitted to the court below, with directions to make distribution in accordance with this opinion, the costs of the appeal to be paid by the appellees.

RANDOLPH'S APPEAL.

OPINION, MR. CHIEF JUSTICE PAXSON:

This appeal is from the same decree as Keim's Appeal and Boyer's Appeal, just decided. While the appellant concedes

that the fund should be distributed to the thirteen grandchildren of Mary H. Keim, yet he contends that it should be distributed per stirpes and not per capita, as ordered by the court. This is his principal grievance. As we have decided in Boyer's Appeal that the fund was to be divided into five equal parts and distributed under the residuary clause of the will of Esther High, this appeal is not of much importance and the respective assignments need not be discussed. As the principle upon which the distribution was made is erroneous, we need not consume time with the details. The decree is reversed upon this appeal and distribution ordered in accordance with the opinion in Boyer's Appeal.

> Decree reversed at the costs of the appellees; and it is ordered that the record be remitted with instructions to make distribution in accordance with the opinion in Boyer's Appeal.